IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GLORIA JUANITA OCTAVE,
Administratrix of the Estate of
Lutalo Octave,
          Plaintiff,

v.                                      Civil Action No. 3:16-cv-00338-JAG

MICHAEL L. WADE,
AUGUSTUS EDWARDS,
SARA TOLENTINO,
ASHLEY RHOADES,
CHRISTINE SCHEIN,
LOUIS FOX, and
JOHN DOE(S) JAIL STAFF,
          Defendants.

## OPINION

Lutalo Octave, a pretrial detainee, committed suicide at Henrico County Regional Jail West (the "County Jail"). Octave's mother ("Mrs. Octave"), the Administratrix of Octave's Estate, has sued the Henrico County Sheriff, unknown correctional officers at the County Jail ("John Doe(s) Jail Staff"), and five members of the County Jail's medical staff (the "Medical Staff Defendants").[1] Under 42 U.S.C. § 1983, she alleges the Medical Staff Defendants acted with deliberate indifference to Octave's serious medical needs, in violation of his substantive due process rights under the Fourteenth Amendment.[2] Mrs. Octave also raises state law claims

---

[1] The Medical Staff Defendants include Louis Fox, a licensed clinical psychologist; Ashley Rhoades, a nurse practitioner; Christine Schein, a licensed clinical social worker; and Augustus Edwards and Sara Tolentino, members of the County Jail medical staff.
[2] Actually, Ms. Octave contends the defendants violated the Eighth Amendment's rule against cruel and unusual punishment. The Eighth Amendment, however, applies only to convicted inmates, not pretrial detainees. *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983). The distinction makes no difference, because the same standard applies to Eighth Amendment and Fourteenth Amendment cases alleging inadequate medical care. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001).

based on both negligence and gross negligence. The Medical Staff Defendants have moved to dismiss all counts brought against them. The Court grants the motion as to the claims of deliberate indifference and gross negligence because the complaint does not identify specific facts demonstrating liability by each defendant. The Court grants leave to amend the complaint to cure the defects.

Sovereign immunity protects the Medical Staff Defendants from the state law claim of simple negligence. The Court dismisses that claim with prejudice.

## I. BACKGROUND

Police arrested Octave on August 14, 2015, after he set fire to his parents' home. Police took him to the County Jail, where intake records did not report any major medical problems.

On August 19, 2015, Mrs. Octave spoke with Christine Schein at the County Jail and asked the jail staff to give Octave a mental health evaluation based on his recent unusual behavior, including his crime. Over the next few days, members of the medical staff, including Augustus Edwards and Ashley Rhoades, met with and evaluated Octave.[3] The staff noted that Octave gave confused answers, experienced hallucinations and delusions, heard voices, and had thoughts of self-harm. On August 28, 2015, Louis Fox diagnosed Octave with schizophreniform disorder, a form of psychosis with symptoms of schizophrenia.

On August 29, 2015, after Octave made additional suicidal statements, the jail placed him on a one-to-one mental health watch. On August 31, 2015, Edwards transferred him from one-to-one watch into the mental health dayroom, with instructions for correctional officers to watch him once every thirty minutes.

---

[3] The complaint says the County Jail employed all of the Medical Staff Defendants. The defendants argue that the Henrico County Department of Mental Health and Behavioral Services employed them. This discrepancy does not change the Court's analysis.

On September 10, 2015, Octave told Sara Tolentino that if he harmed himself, he would do so by hanging. On September 11, 2015, jail officials transferred Octave to a camera cell with an improperly functioning camera,[4] with continued instructions to watch him once every thirty minutes. The camera cell had a high shelf on the wall and sheets on the bed. Octave continued to report hallucinations and thoughts of self-harm.

On September 19, 2016, Octave hanged himself with his bedsheet. Guards found him at 11:56 a.m., twenty-three minutes after the most recent check-in. Emergency personnel attempted to revive Octave and took him to the hospital, but the hospital pronounced him dead at 12:42 p.m.

## II. DISCUSSION[5]

Against the Medical Staff Defendants, Mrs. Octave alleges unconstitutional deliberate indifference to Octave's medical needs in Count III, gross negligence in Count IV, and negligence in Count V. The Medical Staff Defendants ask this Court to dismiss all counts against them.

---

[4] Mrs. Octave alleges that she "has a reasonable basis to believe that the camera in Octave's camera cell . . . was not properly functioning at the time of his death." (Compl. ¶ 46.) At the pleading stage, the Court must accept all factual allegations in the complaint as true. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

[5] The Medical Staff Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claim(s). *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. Negligence

Sovereign immunity protects the Medical Staff Defendants against the state law claim of simple negligence. In Virginia, sovereign immunity protects employees of a local government if: (1) the employing entity has immunity for the function performed by the employees; (2) the employees meet the four-factor test set forth in *James v. Jane*; and (3) the claim against the employee raises liability based on simple negligence. *Messina v. Burden*, 228 Va. 301, 310–13, 321 S.E.2d 657, 662–64 (1984).[6] The factors set forth in *James* are:

> 1. The function the employee was performing;
> 2. The state's interest and involvement in that function;
> 3. Whether the act performed by the employee involved the use of judgment and discretion; and
> 4. The degree of control and direction exercised by the state over the employee.

*Pike v. Hagaman*, 292 Va. 209, 787 S.E.2d 89, 92 (2016) (citing *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980)). "[I]n applying the James test to employees of other immune governmental entities, the word 'state' should be deleted and the proper description of the governmental entity substituted." *Messina*, 228 Va. at 313, 321 S.E.2d at 664.

In this case, the Medical Staff Defendants work either for Henrico County, an immune entity, or for the Henrico County Sheriff, whose office is also an immune governmental entity. The complaint alleges simple negligence. The analysis thus turns on the four-factor test.

The function performed by the Medical Staff Defendants—providing medical care to detainees at the County Jail—falls squarely within a governmental function, and an important governmental function at that. Indeed, *not* providing medical care to detainees violates the Constitution. Thus, the local government has a great interest in and control over the function

---

[6] *See Dowdy v. Pamunkey Regional Jail Authority*, No. 3:14-cv-003-JAG, 2014 WL 2002227, at *3–4 (reviewing the Commonwealth's complicated and inconsistent set of rules governing the immunity of individual local officials).

performed by the Medical Staff Defendants.[7] The complaint shows that the Medical Staff Defendants exercised discretion in their interactions with and treatment of Octave, regardless of whatever policies the County Jail had in place. Consequently, all four factors point towards a finding of sovereign immunity for the Medical Staff Defendants.

The Court, therefore, will dismiss Count V with prejudice.

### B. Deliberate Indifference; Liability Under § 1983

#### 1. Defective Pleading

Count III of the complaint tries to state a claim against the Medical Staff Defendants under 42 U.S.C. § 1983. Unfortunately, the complaint suffers a fundamental defect. It asserts a claim of inadequate medical care against the five Medical Staff Defendants as a group. Liability under 42 U.S.C. § 1983, however, requires individual involvement in the constitutional wrongs alleged in the complaint. The doctrine of respondeat superior does not apply in § 1983 cases, and the culpability of one government official does not infect his or her colleagues by osmosis. *McWilliams v. Fairfax County Bd. of Supers.*, 72 F. 3d 1191, 1197 (4th Cir. 1996). Rather, a plaintiff must show some constitutionally wrongful action by each defendant he sues. "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The complaint ignores this fundamental principle of § 1983 law. Although the plaintiff alleges some specific actions by specific defendants, when it comes to asserting a claim she simply says that the "Medical Staff Defendants" collectively violated Octave's rights. A quick

---

[7] As this Court noted in *Dowdy v. Pamunkey Reg'l Jail Auth.*, Virginia has extensive statutes and regulations that cover the operation of jails. No. 3:14-CV-003-JAG, 2014 WL 2002227, at *4 (E.D. Va. May 15, 2014) (citing Va. Code §§ 53.1–95.2–95.24 and Va. Code §§ 53.1–68–71).

review of the facts alleged, however, does not lead to the conclusion that all the Medical Staff Defendants stand equally before the Court.

For instance, the complaint says that defendant Fox diagnosed Octave with schozophreniform disorder. Complaint ¶ 37. The complaint does not say anything else Fox did. The day after Fox's diagnosis, the jail staff put Octave under one-on-one watch, with a deputy monitoring him all the time. Complaint ¶ 39. At the initial pretrial conference in this case, plaintiff's counsel said that the defendants' constitutional violation arose from not putting Octave under one-on-one monitoring—the very thing that happened immediately after Fox diagnosed Octave's illness. Perhaps Fox committed some additional unnamed wrong, but the complaint does not enlighten anyone about it. Other than grouping Fox with the Medical Staff Defendants, the complaint provides no basis to find Fox liable.

Similar issues exist as to all the Medical Staff Defendants. On this basis alone, the Court will dismiss Count III. The Court will, however, grant the plaintiff leave to amend the complaint specifying the precise actions of each defendant leading to liability under § 1983.

### 2. Deliberate Indifference

The Constitution requires jailors to provide medical care to inmates. The medical care need not be perfect, but jail officials cannot be deliberately indifferent to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (dealing with medical needs of convicted inmates); *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (applying the *Estelle* standard to pretrial detainees).

The test for a deliberate indifference claim has an objective and a subjective component. Objectively, the detainee's medical need must be sufficiently serious. *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). Subjectively, the prison official must have shown deliberate

indifference, meaning he had "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* at 226 (citation, quotation marks, and alternation omitted). Nevertheless, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

In this case, Octave certainly suffered from a serious medical need.[8] As noted above, however, the complaint must spell out how each defendant—not the defendants as a class—showed deliberate indifference to Octave's plight. The Court has doubts that this claim against the Medical Staff Defendants can survive summary judgment, because Octave lived safely in the jail for two weeks without one-on-one monitoring, received individual monitoring every half hour, and died within thirty minutes of the last check on him. Perhaps the staff should have monitored him more often, but the facts in the complaint at this time do not show that anyone acted with deliberate indifference. In any event, that remains a question for another day. For now, the Court grants the motion of the Medical Staff Defendants as to Count III.[9]

### C. Gross Negligence

The Court also grants the motion to dismiss Count IV, but again grants the plaintiff leave to amend the complaint. In Virginia, gross negligence is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Elliott v. Carter*, __ Va. __, 791 S.E.2d 730, 732 (2016)

---

[8] *See Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992) (holding that serious psychological conditions, including those involving threats of suicide, qualify as serious medical need for a deliberate indifference claim).

[9] Given the need to replead the case, the Court denies as moot the Medical Staff Defendants' claim of qualified immunity. The Court must determine qualified immunity based on the specific facts as to each defendant.

(citation omitted).   It "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.*  In other words, a claim of gross negligence fails when the defendants exercised some degree of care. *Id.*

For the same reasons as the § 1983 claim, the gross negligence claim fails.  The plaintiff must spell out how each defendant acted with gross negligence, not the entire staff.

## III. CONCLUSION

In summary, sovereign immunity protects the Medical Staff Defendants from liability as to simple negligence.  As to gross negligence and deliberate indifference, however, the complaint needs more factual development as to each defendant to determine if each member of the medical staff acted with a sufficiently culpable state of mind.  Accordingly, the Court grants the motion to dismiss Counts III and IV, but grants leave to amend them.  The Court dismisses Count V.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Order to all counsel of record.

Date: <u>February 3, 2017</u>
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge